1  MICHAEL J. NADER, SBN 200425
   michael.nader@ogletree.com
2  ALEXANDRA ASTERLIN, SBN 221286
   alexandra.asterlin@ogletree.com
3  PAUL M. SMITH, SBN 306644
   paul.smith@ogletree.com
4  OGLETREE, DEAKINS, NASH,
   SMOAK & STEWART, P.C.
5  500 Capitol Mall, Suite 2500
   Sacramento, CA  95814
6  Telephone:    916-840-3150
   Facsimile:    916-840-3159
7
8  Attorneys for Defendant
   ROADSAFE TRAFFIC SYSTEMS, INC.

9              **UNITED STATES DISTRICT COURT**

10      **EASTERN DISTRICT OF CALIFORNIA - SACRAMENTO**

11

12  ADRIANA MAGDALENA RAMOS,            Case No. _____
    individually and on behalf of all others similarly
13  situated,                          **DEFENDANT ROADSAFE TRAFFIC
                                       SYSTEMS, INC.'S NOTICE OF
14                Plaintiff,           REMOVAL OF STATE COURT ACTION
                                       TO FEDERAL COURT**
15         vs.
                                       [Filed concurrently with Civil Case Cover
16  ROADSAFE TRAFFIC SYSTEMS, INC.; and  Sheet; Defendants' Certificate of Interested
    DOES 1 through 20, inclusive,      Parties and Corporate Disclosure Statement;
17                                     Declarations of Angela Izuel, Margaret E.
                  Defendant.           Bennett, and Alexandra M. Asterlin]
18
                                       Action Filed:      2/8/2023
19                                     Trial Date:        None Set

20  **TO THE CLERK OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN**

21  **DISTRICT OF CALIFORNIA, PLAINTIFF ADRIANA MAGDALENA RAMOS, AND HER**

22  **COUNSEL OF RECORD**:

23          PLEASE TAKE NOTICE THAT, pursuant to the Class Action Fairness Act of 2005

24  ("CAFA"), 28 U.S.C. sections 1332(d), 1453, and 1711, Defendant ROADSAFE TRAFFIC

25  SYSTEMS, INC. ("Defendant") hereby removes to the United States District Court for the Eastern

26  District of California the above-captioned state court action, originally filed as Case No. 34-2023-

27  00334458 in Sacramento County Superior Court, State of California. Removal is proper on the

28  following grounds:

## I.        TIMELINESS OF REMOVAL

1.        Plaintiff ADRIANA MAGDALENA RAMOS ("Plaintiff") filed a putative Class Action Complaint against Defendant in Sacramento County Superior Court, State of California, Case No. 34-2023-00334458, on February 8, 2023 ("State Court Action").  Pursuant to 28 U.S.C. section 1446(a), true and correct copies of the Summons and Complaint, and all other process, pleadings, and orders served on Defendant in the State Court Action are attached to this Notice of Removal as **Exhibit A**.

2.        On February 10, 2023, Defendant received service of the Summons and Complaint through their registered agents for service of process. These documents were the initial pleadings received by Defendant setting forth of the claims upon which this action is based. True and correct copies of these documents, along with all pleadings, process, and other documents Defendant received in this action are attached hereto as **Exhibit A**.

3.        The parties entered a Joint Stipulation to Stay this Matter pending mediation. As a part of the stipulation, the parties agreed the stipulation would not prejudice Defendant's right to remove this action. The Superior Court approved the stipulation on May 5, 2023. A true and correct copy of this stipulation and order is attached as **Exhibit B** to the Declaration of Alexandra M. Asterlin in support of Removal.

4.        On or about September 12, 2023, Plaintiff violated the terms of the Stipulation by serving formal discovery without providing the required notice of intent to lift the stay; thus negating the Stipulation to Stay.

5.        The time to remove under 28 U.S.C. section 1446(b) does not begin to run until receipt by the defendant, through service or otherwise, of a pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable. *Harris v. Bankers Life & Cas. Co.,* 425 F.3d 689, 694 (9th Cir. 2005) ("*Harris*"). In *Harris*, the Ninth Circuit held defendants have no obligation to investigate or develop additional information as to removability. *Id.* at 694 ("[N]otice of removability under 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry" by the defendant). In *Kuxhausen v. BMW Fin. Servs. NA* LLC, 707

F.3d 1136 (9th Cir. 2013), the Ninth Circuit reinforced its decision in *Harris* regarding the duty to investigate removability, finding that defendants are not "saddl[ed] with the burden of investigating jurisdictional facts" to ascertain removability. *Kuxhausen*, 707 F.3d at 1139.

6.     In *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013), the Ninth Circuit affirmed *Harris*' holding "that a defendant does not have a duty of inquiry if the initial pleading or other document is 'indeterminate' with respect to removability." *Roth* explained, "a defendant who has not lost the right to remove because of a failure to timely file...may remove to federal court when it discovers, based on its own investigation, that a case is removable." *Id.* 1123. District courts have subsequently followed this Ninth Circuit precedent: "The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law." *Jakuttis v. Allstate Indem. Co.,* No. EDCV 15-0624 JGB (KKx), 2015 WL 3442083, at *4 (C.D. Cal. May 27, 2015). "Regardless of when [the defendant] learned the parties were diverse, their notice of removal was timely under 28 U.S.C. § 1446(b)(3) . . ." *Vigil v. Waste Connections, Inc.*, No. 2:14-cv-02383-KJM-CKD, 2015 WL 627877, at *4 (E.D. Cal. Feb. 11, 2015). Thus, when the Complaint "does not reveal that the case is removable [under CAFA], the 30–day time period never starts to run and the defendant may remove at any time." *Rea v. Michaels Stores Inc.,* 742 F.3d 1234, 1238 (9th Cir. 2014)

7.     Here, it is evident that the $5 million amount in controversy threshold cannot be derived from the "four corners" of Plaintiff's Complaint. *See Harris v. Bankers Life and Casualty Co.*, 425 F.3d 689, 694 (9th Cir. 2005) (holding notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings). The Complaint provides no substantive facts regarding the basis for Plaintiff's asserted damages. The Complaint does not state the number of workweeks at issue. The Complaint merely states the class is "estimated to be greater than fifty (50) individual. (Exhibit A, Complaint, ¶25 (a).) Plaintiff does not allege her hourly rate of pay or provide any allegation specifying the amount of damages for any of her claims. Thus, an amount in controversy for CAFA removal cannot be reasonably derived from this information. *See, e.g., Zhao v. RelayRides, Inc.,* No. 17-cv-04099-JCS, 2017 WL

6336082, *12 (N.D. Cal. Dec. 12, 2017) (finding plaintiff's complaint "did not reveal on its face that the action was removable under CAFA" where it "contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either [the plaintiff's] damages or the damages of the class as a whole"); *Trahan v. U.S. Bank Nat'l Ass'n, No.* C 09–03111 JSW, 2014 WL 116606, *4 (N.D. Cal. Jan. 13, 2014) (finding documents were indeterminate and did not trigger removal deadline where they "did not expressly state that the amount in controversy would exceed $5,000,000...and did not make any specific assertions about the amount of damages that might be available to the class or the value of injunctive relief").

8.      The Complaint does not provide readily ascertainable grounds for removal.

9.      As such, this Notice of Removal is timely filed.

## II.      SUMMARY OF ALLEGATIONS AND GROUNDS FOR REMOVAL

10.      Removal is proper pursuant to 28 U.S.C. sections 1441 and 1453 because this Court has subject-matter jurisdiction over this action and all claims asserted against Defendant, pursuant to the Class Action Fairness Act of 2005 ("CAFA"), *id.* § 1332(d).

11.      CAFA applies "to any class action before or after the entry of a class certification order by the court with respect to that action." *Id.* § 1332(d)(8). This case is a putative "class action" under CAFA because it was brought under California Code of Civil Procedure section 382, California's state statute or rule authorizing an action to be brought by one or more representative persons as a class action. See 28 U.S.C. § 1332(d)(1)(B).

12.      Plaintiff seeks to represent the following Class:

**Class**

13.      All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 14, 2018 and the date of class certification ("Class"). (Complaint, ¶20.)

///

///

///

DEFENDANT'S NOTICE OF REMOVAL TO FEDERAL COURT

14. Additionally, Plaintiff seeks to represent the following sub-class of employees:

**Waiting Time Subclass**

15. All members of the Class who separated their employment with Defendant at any time between August 14, 2019 and the date of the class certification ("Waiting Time Subclass"). (Complaint, ¶21.)

16. In the Complaint, Plaintiff alleges nine (9) causes of action against Defendant: (1) Failure to Pay Minimum Wages; (2) Failure to Pay Overtime Wages; (3) Failure to Provide Meal Periods; (4) Failure to Permit Rest Breaks; (5) Failure to Reimburse Business Expenses; (6) Failure to Provide Accurate Itemized Wage Statements; (7) Failure to Pay Wages Timely During Employment; (8) Failure to Pay All Wages Due Upon Separation of Employment; and (9) Violation of Business and Professions Code §§17200, et. seq.

17. Among other things, Plaintiff alleges putative class members are entitled to unpaid wages- both minimum wages and overtime, meal and rest period premiums, unreimbursed business expenses, statutory penalties for late payment of wages and inaccurate wage statements, interest, and attorneys' fees. (Complaint, ¶¶4, 5, 36, 42, 55, 64, 71, 79, 84, 89, 96, and Prayer for Relief section.) More specifically, Plaintiff alleges the following: "Defendants engaged in a systemic pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission ("IWC") Wage Orders" (Complaint, ¶3);

18. Here, Plaintiff makes allegations that the Defendant "engaged in a systematic pattern of wage and hour violations" of failing to pay minimum and overtime wages, failing to provide compliant meal and rest breaks, failing to provide timely wages and final wages, failing to reimburse expenses, and failing to provide compliant wage statements. (Complaint ¶¶3-4). However, Plaintiff makes no allegations to indicate any limit to the frequency of the alleged violations. Thus, it is entirely reasonable for Defendant to assume up to a 100% violation rate for each of Plaintiff's claims. *See, e.g., Rea*, 742 F.3d at 1239 (recognizing effect of company declaration showing store managers expected to work 45-50 hours per week for amount-in-controversy calculation on overtime claim); *Bryant v. NCR Corp.,* 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not submit any evidence as to the violation rates,

"assumption of a 100 percent violation rate may have been reasonable based on the allegations in the Complaint," which "offered no guidance as to the frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent violation rate because Plaintiff does not qualify her allegations" and "[a]lthough afforded the opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate on which the Court should rely.").

19.     Plaintiff further alleges that Defendant "willfully," "knowingly," and "intentionally," violated the law. (see Exhibit A, Complaint, ¶¶17, 35, 78, 82, 83, 85, 103.)

20.     Removal of a class action under CAFA is proper if: (1) there are at least one-hundred (100) members in the putative class; (2) there is minimal diversity between the parties, such that at least one class member is a citizen of a state different from any Defendant; and (3) the aggregate amount in controversy exceeds five million dollars ($5,000,000), exclusive of interest and costs. See 28 U.S.C. §§ 1332(d), 1441.

21.     Defendant denies any liability in this case, both as to Plaintiff's individual claims and as to the claims she seeks to pursue on behalf of the putative class. However, solely for purposes of the jurisdictional requirements for removal, the allegations in Plaintiff's Complaint and a thorough analysis of Defendant's data demonstrates there is a putative class of more than one-hundred (100) members and the alleged claims place in controversy are, in the aggregate, an amount substantially exceeding five million dollars ($5,000,000). See *id.*, § 1332(d)(6).

**A.     The Proposed Class Consists of More Than One-Hundred (100) Members**

22.     Based on the allegations in the Complaint, this action satisfies CAFA's requirement that the putative class contains at least one-hundred (100) members. See *id.* § 1332(d)(5)(B).

23.     Plaintiff proposes to represent a Class and Sub-Class of employees in this action. (Complaint, ¶¶20, 21.) Plaintiff further alleges, "the Class is estimated to be greater than fifty (50) individuals." (Complaint, ¶25(a)) The putative classes consist of those who were and are employed by Defendant in California at any time during the period of four (4) years prior to the filing of the Complaint. (Declaration of Angela Izuel in Support of Defendant's Notice of Removal ("Izuel

Decl."), ¶ 7).  Based on a review of the Defendant's business records, the putative class, as defined by Plaintiff's Complaint, includes over 408 putative class members.   (Izuel Decl., ¶ 7.)

24.     Although Defendant denies class treatment is appropriate, Plaintiff's proposed class, as pled, and if certified, would easily consist of more than one-hundred (100) members.

**B.     Diversity of the Parties Exists**

25.     Under CAFA's minimum diversity of citizenship requirement, the plaintiff or any member of the putative class must be a citizen of a different state from any defendant. See 28 U.S.C. § 1332(d)(2)(A).  That is, the citizenship of at least one class member is diverse from the citizenship of at least one defendant.  *Id.*

26.     A person is a citizen of the state in which he or he is domiciled. *Kantor v. Wellesley Galleries, Ltd*., 704 F.2d 1088, 1090 (9th Cir. 1983). A party's residence is prima facie evidence of his or his domicile. *Ayala v. Cox Auto., Inc*., No. CV 16-06341-GHK (ASx), 2016 WL 6561284, at *4 (C.D. Cal. Nov. 4, 2016) (citing *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994)). Plaintiff has alleged she is a resident of California. (Complaint, ¶10.)  These allegations are prima facie evidence of domicile, which creates a rebuttable presumption sufficient to support removal. *Lew v. Moss*, 797 F.2d 747, 751 (9th Cir. 1986) (allegations of residency in state court Complaint create rebuttable presumption of domicile.) Additionally, Plaintiff's personnel and wage records indicate she most recently lived and worked in California. (Declaration of Margaret E. Bennett ("Bennett Decl".), ¶8.) Plaintiff is therefore considered a citizen of California for purposes of removal under CAFA. See Ayala, 2016 WL 6561284, at *4.

27.     A corporation is a citizen of its state of incorporation and the state of its principal place of business. 28 U.S.C. § 1332(c)(1).

28.     At the time this action commenced in state court and as remains today, Defendant ROADSAFE TRAFFIC SYSTEMS, INC. organized under the laws of the State of Delaware. (Bennett Decl, ¶3.)

29.     The Supreme Court has interpreted the phrase "principal place of business" in 28 U.S.C. section 1332(c)(1) to mean "the place where a corporation's officers direct, control, and coordinate the corporation's activities," i.e., its "nerve center," which "should normally be the

place where the corporation maintains its headquarters— provided that the headquarters is the actual center of direction, control, and coordination[.]" *The Hertz Corp. v. Friend, et al.*, 559 U.S. 77, 92–93 (2010).

30.     Defendant's business operations and executive and administrative functions are controlled by ROADSAFE TRAFFIC SYSTEMS, INC.'s corporate headquarters in Chicago, Illinois. (Bennett Decl., ¶4, 5.)

31.     Thus, Defendant ROADSAFE TRAFFIC SYSTEMS, INC. is a citizen of Delaware and Illinois.

32.     "For purposes of removal…the citizenship of defendants sued under fictitious names shall be disregarded." 28 U.S.C. §1441 (b)(1). Inclusion of "DOE" defendants in a state court Complaint has no effect on removability. *Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 690 (9th Cir. 1998) (holding that in determining whether diversity of citizenship exists, only the named defendants are considered.) Therefore, Plaintiff's inclusion of DOES 1 through 20 in the Complaint is inapposite to the issue of diversity or removal.

33.     Pursuant to 28 U.S.C. §§ 1332(a) and 1441(a), this Court has original jurisdiction over this case under CAFA because Plaintiff is and was, at all times relevant to this action, a citizen of the State of California, and Defendant is and was, at all times relevant to this action, a citizen of the States of Delaware and Illinois. Therefore, complete diversity between Plaintiff and Defendant exists now, and did exist at the time the Complaint was filed, and minimal diversity exists between Defendant and the putative class.

**C.     The Amount in Controversy Exceeds Five Million Dollars ($5,000,000)**

34.     Pursuant to 28 U.S.C. § 1332(d), this Court has original jurisdiction over this matter because, in addition to the other requirements of § 1332(d), the amount in controversy in this action exceeds five million dollars ($5,000,000), exclusive of interest and costs. See, 28 U.S.C. §1332(d)(2). Of note, in calculating the amount in controversy, a court must aggregate the claims of all individual class members. *Id.* § 1332(d)(6).

35.     Unlike other cases, there is no anti-removal presumption for cases invoking CAFA. *Arias v. Residency Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019).

"[A] defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). A removing defendant's notice of removal "need not contain evidentiary submissions." *Arias*, supra, at 922 (quoting *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015). Thus, to satisfy its burden, a defendant may rely on a "chain of reasoning" that is based on "reasonable" "assumptions." *LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1201 (9th Cir. 2015). "An assumption may be reasonable if it is founded on the allegations of the complaint." *Arias*, supra, at 925; see also *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 964 (9th Cir. 2020) ("[I]n *Arias* we held that a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of jurisdictional elements." (internal quotation marks and citations omitted)). That is because "[t]he amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010). "[I]n that sense, the amount in controversy reflects the maximum recovery the plaintiff could reasonably recover. *Arias, supra*, at 927. (citing *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 417 (9th Cir. 2018) (explaining that the amount in controversy includes all amounts "at stake" in the litigation at the time of removal, "whatever the likelihood that [the plaintiff] will actually recover them"). "[W]hen a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court." *Dart Cherokee Basin Operating Co.*, 574 U.S. at 87. Moreover, "when a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy." *Arias*, supra, at 922. (emphasis added).

36.     Moreover, in assessing whether the amount in controversy requirement has been satisfied, "a court must 'assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.'" *Campbell v. Vitran Express., Inc.*, 471 F. App'x 646, 648 (9th Cir. 2012) (quoting *Kenneth Rothschild Trust v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002)). Indeed, the focus of the Court's inquiry must be on "what amount is put 'in controversy' by the plaintiff's complaint, not what a

1   defendant will actually owe." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1205 (E.D.

2   Cal. 2008) (citing *Rippee v. Bos. Mkt. Corp.*, 408 F. Supp. 2d 982, 986 (S.D. Cal. 2005)).

3        37.    Here, Plaintiff alleges Defendant has consistent practices and policies in effect

4   which result in wage and hour violations. (Complaint, ¶¶ 3, 25, 99, 101.) However, Plaintiff places

5   no limitations on the frequency of the alleged violations in the Complaint.  Thus, it is entirely

6   reasonable for Defendant to assume up to a 100% violation rate for each of Plaintiff's claims. See,

7   e.g., *Lewis*, 627 F.3d at 398-401; *Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1239 (9th Cir. 2014);

8   Bryant v. NCR Corp., 284 F. Supp. 3d 1147, 1151 (S.D. Cal. 2018) (holding where plaintiff did not

9   submit any evidence as to the violation rates, "assumption of a 100 percent violation rate may have

10  been reasonable based on the allegations in the Complaint," 25which "offered no guidance as to the

11  frequency of the alleged violations, only that [d]efendant had 'a policy and practice' of meal and

12  rest period violations"); *Lopez v. Aerotek, Inc.*, No. SACV 14-00803-(CJGx), 2015 WL 2342558, at

13  *3 (C.D. Cal. May 14, 2015) (finding "Aerotek could have logically assumed a 100 percent

14  violation rate because Plaintiff does not qualify his allegations" and "[a]lthough afforded the

15  opportunity to do so on this motion, Plaintiff does not assert or suggest an alternative violation rate

16  on which the Court should rely.").

17       38.    Although Defendant categorically denies Plaintiff's claims have any merit,

18  whatsoever, solely for the purposes of meeting the jurisdictional requirements for removal, if

19  Plaintiff were to prevail on his First through Ninth Causes of Action on behalf of the putative

20  classes, the requested monetary recovery would far exceed five million dollars ($5,000,000.00).

21              **1.    Plaintiff's overtime claim places $410,359.05 in controversy.**

22       39.    Plaintiff alleges Defendant had a policy and practice of failing to pay overtime.

23  (Complaint, ¶¶3, 4, 44-55.)

24       40.    As the Complaint does not include any allegations limiting the number of overtime

25  hours worked or putative class members who suffered from the alleged violations, Defendant may

26  assume a 100% violation rate.  *Lewis*, 627 F.3d at 398-401; *Re*a, 742 F.3d at 1239; *Bryant*, 284 F.

27  Supp. 3d at 1151.

28

41.     Limiting this estimate to one hour per week is reasonable. *See Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at * 5 (E.D. Cal. June 30, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages."). *See, e.g., Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020); *see also Stanley v. Distrib. Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Here, as in *Hender* and *Sanchez, supra*, a violation rate of 1 hour per week is reasonable because Plaintiff alleges a "systematic pattern" of violations and no contrary evidence showing otherwise exists.

42.     Courts in the Ninth Circuit have regularly approved assumptions of one hour of off-the-clock time per week, where, as here, the Complaint broadly alleges off-the-clock work without limitation. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022) (finding assumption of 1 hour of unpaid minimum wage per week was reasonable given the Complaint's lack of specific allegations to the contrary); *Kastler v. Oh My Green, Inc.*, No. 19-cv-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (stating that an assumption of 1 hour of unpaid minimum wage per week was a "conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations").

43.     Plaintiff also alleges that the failure to pay overtime constitutes an unlawful and unfair business practice over businesses that routinely adhere to the strictures of the Labor Code. (Complaint ¶¶ 97-106.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for overtime claims is based on a four (4) year limitations period.

44.     Angela Izuel, an economist and Director of Stout Risius Ross, analyzed the business records of Defendant for the putative class members from December 29, 2018 to September 15,

2023 (putative class members). (Izuel Decl., ¶7.) In doing so, Izuel determined the average hourly base rate of pay for the putative class members and assumed a single unpaid hour of overtime per week (only a 20% violation rate) for the putative class members to calculate the amount in controversy for this claim. (Izuel Decl. ¶¶27-27.)

45.     Based on a conservative estimate of one unpaid hour of overtime worked per week, the amount placed in controversy by Plaintiff's allegations is $410,359.05. (*Id.* ¶¶ 27.)

46.     A reasonable reading of Plaintiff's unpaid overtime allegations (Complaint, ¶¶10, 11, 28-31.) supports Defendant's conservative assumption that the Complaint places in controversy at the very least one hour of unpaid overtime per class member per workweek.  See, e.g., *Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (assuming one hour of unpaid minimum wages and unpaid overtime per week per class member "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations").  Only one hour per week is reasonable.  See *Sanchez v. Abbott Lab'ys*, No. 2:20-cv-01436-TLN-AC, 2021 WL 2679057, at * 5 (E.D. Cal. June 30, 2021) ("Courts in this Circuit have often found a 20% violation rate (one unpaid overtime hour per week) a reasonable and 'conservative estimate' when plaintiff alleges a 'policy and practice' of failing to pay overtime wages."). See, e.g., *Hender v. Am. Directions Workforce LLC*, No. 2:19-cv-01951-KJM-DMC, 2020 WL 5959908, at *8 (E.D. Cal. Oct. 8, 2020); see also *Stanley v. Distrib. Alts., Inc.*, No. EDCV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (holding violation rate of "two hours of overtime" reasonable where the complaint alleged a "'pattern and practice' of wage and hour violations" but "no guidance as to the frequency of these violations" and there was "no competing evidence that would suggest lower violation rates"). Here, as in *Hender* and *Sanchez*, supra, a 20% violation rate is reasonable because Plaintiff alleges a pattern and practice of violations and no contrary evidence showing otherwise exists.

## 2.     Plaintiff's meal period claim places $618,942.85 in controversy.

47.     Plaintiff allege Defendant had a policy and practice of failing to provide compliant meal periods.  (Complaint, ¶¶3-4, 56-64.)

48.     Defendant denies any such violations occurred or that compensation is owed to Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and the putative class members were allegedly denied meal break periods.

49.     For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's allegation that violations regularly occurred and compensation is owed. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 399 (9th Cir. 2010) ("in determining the amount [in controversy], we first look to the complaint."); *Heejin Lim v. Helio, LLC*, 2012 WL 359304, at *2 (C.D. Cal. Feb. 2, 2012) ("The ultimate inquiry is, therefore, what amount is put 'in controversy' by the plaintiff's complaint or other papers, not what the defendant will actually owe for the actual number of violations that occurred, if any.") (citations omitted).

50.     Under California law, employees who are denied the opportunity to take proper meal periods are entitled to one hour of premium pay for each day that a meal period is missed, late, or interrupted. *Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, at *7 (C.D. Cal. 2009). Meal period claims are properly considered in determining the amount in controversy. *Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, at *4 (E.D. Cal. 2007).

51.     Plaintiff also alleges the failure to provide meal periods constitutes an unlawful and unfair business practice over businesses that routinely adhere to the strictures of the Labor Code. (Complaint ¶¶ 97-106.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for meal break claims is based on a four (4) year limitations period.

52.     As the Complaint does not include any allegations limiting the number of alleged meal period violations, Defendant may assume a 100% violation rate. *Lewis*, 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151.

53.     Courts have permitted a much higher assumption of up to 60% violation rates with allegations of a company-wide practice of failing to provide compliant meal breaks, along with no allegations concerning the frequency of the violations.  See, *Sanchez*, 2021 WL 2679057, at *4–5 (finding a 60% violation rate for meal and rest break claims to be appropriate based on the complaint's "pattern and practice" allegation that resulted in unpaid meal and rest period premiums

to some "but not all" class members); *Bryant*, 284 F. Supp. 3d at 1151 (holding a complaint alleging a policy and practice of meal and rest period violations with no guidance as to the frequency justifies an estimate of at least three missed meal periods and three missed rest periods per week and up to five missed meal periods and five missed rest periods per week); *Stanley*, 2017 WL 6209822, at *2 (finding assumption of three violations per week reasonable where the complaint alleged defendant "engaged in a 'pattern and practice' of wage and hour violations" but "provides almost no allegations concerning the frequency of the alleged violations, and [plaintiff] provides no competing evidence that would suggest lower violation rates"); *Navarro v. Servisair*, *LLC*, No. C 08-02716 MHP, 2008 WL 3842984, at *9 (N.D. Cal. Aug. 14, 2008) (assuming three weekly meal violations reasonable where the plaintiff "[did] not limit his claim by stating that only a certain number of hours went uncompensated").

54.     Thus, Defendant's assumption of a 60% violation rate is de jure reasonable and consistent with the authority cite hereinabove.  Defendant is not "required to comb through its records to identify and calculate the exact frequency of violations," *Rodriguez v. USF Reddaway, Inc.*, No. 2:21-cv-02270-TLN-DB, 2022 WL 3274345, at *5 (E.D. Cal. Aug. 11, 2022) (noting courts have found "violation rates of 25% to 60% can be reasonably assumed as a matter of law" based on policy and practice allegations). "[R]equiring Defendants to forecast an exact violation rate would essentially force a removing defendant to prove the plaintiff's case." *Thomas v. Aetna Health of California, Inc.*, No. 1:10-CV-01906-AWI, 2011 WL 2173715, at *20 (E.D. Cal. Jun. 2, 2011), report and recommendation adopted sub nom., 2011 WL 13240291 (Aug. 31, 2011) (citations omitted).

55.     To calculate the amount in controversy for the meal period claim, Izuel analyzed the business records of Defendant for the putative class members and assumed a potential exposure rate of 60% of the shifts worked that were greater than five (5) hours, multiplied the number of shifts worked of more than five (5) hours by the potential violation rate and rounded up to the next whole number.  (Izuel Decl., ¶¶ 18.) Izuel utilized a weighted average hourly rate paid to Plaintiffs in the amount of $19.85 per hour in calculating the potential exposure. (Izuel Decl., ¶19.)

56.     Based on a conservative estimate of a 60% violation rate, the amount placed in controversy by Plaintiff's allegations is $618,942.85. (Izuel Decl., ¶¶ 20.)

### 3.     Plaintiff's rest break claim places $653,878.85 in controversy.

57.     Plaintiff alleges Defendant had a policy and practice of failing to provide compliant rest breaks.  (Complaint, ¶¶ 3-4, 65-71.)

58.     Defendant denies any such violations occurred or that compensation is owed to Plaintiff or the putative class members, and the Complaint does not specify how often Plaintiff and the putative class members were allegedly denied rest break periods.

59.     For purposes of this jurisdictional analysis only, then, Defendant relies on Plaintiff's allegation that violations regularly occurred and compensation is owed. *Lewis*, supra, at 399; *Lim*, supra, at *2.

60.     Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a rest period is missed or interrupted. *Marlo*, supra, at *7 (C.D. Cal. 2009). Rest period claims are properly considered in determining the amount in controversy. *Muniz*, supra, at *4.

61.     Plaintiff also alleges that the failure to provide rest periods constitutes an unlawful and unfair business practice over businesses that routinely adhere to the strictures of the Labor Code. (Complaint ¶¶ 97-106.) The statute of limitations for such a claim is four (4) years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for rest break claims is based on a four (4) year limitations period.

62.     As the Complaint does not include any allegations limiting the number of alleged rest break violations, Defendant may assume a 100% violation rate. *Lewis*, 627 F.3d at 398-401; *Rea*, 742 F.3d at 1239; *Bryant*, 284 F. Supp. 3d at 1151.

63.     Courts have permitted a 60% violation rates with allegations of a company-wide practice of failing to provide compliant rest breaks, along with no allegations concerning the frequency of the violations. *See Sanchez,* 2021 WL 2679057, at *4–5; *Bryant*, 284 F. Supp. 3d at 1151.

64.     To calculate the amount in controversy for the rest period claim, Izuel analyzed the business records of Defendant for the putative class members and assumed a potential exposure rate of only 60% of shifts worked that are greater than or equal to three and one-half (3.5) hours. (Izuel Decl. ¶¶ 22.) For each putative class member, Izuel multiplied the number of shifts worked of more than three and one-half (3.5) hours by the potential violation rate and rounded up to the next whole number. (*Id.*)

65.     Regardless, based on a conservative estimate of a 60% violation rate for rest breaks, the amount placed in controversy by Plaintiff's allegations is $653,878.85. (Izuel Decl., ¶¶ 23.)

66.     Courts have permitted a 60% violation rate, with allegations of a company-wide practice of failing to provide compliant rest breaks, along with no allegations concerning the frequency of the violations.  See *Sanchez*, 2021 WL 2679057, at *4–5; *Bryant*, 284 F. Supp. 3d at 1151.  Thus, Defendant's assumptions are more than reasonable.

### 4.     Plaintiff's failure to timely pay claim places $1,958,500.00 in controversy.

67.     Plaintiff also seeks penalties for alleged failure to pay in a timely manner pursuant to Labor Code §204. (Complaint, ¶¶3-4, 86-90.)  All wages earned in employment are due and payable twice during each calendar months on dates designated in advance by the employer. (Labor Code §204.) Plaintiff also seeks penalties for alleged failure to pay in a timely manner pursuant to Labor Code §204. (Complaint, ¶¶86-90.)  All wages earned in employment are due and payable twice during each calendar months on dates designated in advance by the employer. (Labor Code §204.)

68.     To calculate the amount in controversy for the failure to timely pay wages claim, Izuel identified putative class members who were provided a wage statement from February 8, 2022 through September 15, 2023, and assigned a penalty of $100 for the first pay period and $200 for each subsequent pay period. (Izuel Decl. ¶¶ 39.) Based on Plaintiff's allegations, the amount in controversy on the alleged failure to pay in a timely manner is $1,958,500.00. (Izuel Decl. ¶¶ 40.)

///

///

1    **4.      Plaintiff's business expense claim places $37,690.00 in controversy.**

2    69.    Plaintiff alleges Defendant failed to reimburse or indemnify necessary business

3    expenses incurred by Plaintiff and the putative class. (Complaint, ¶3-4, 72-79.)

4    70.    A review of Defendant's business records confirms the putative class members were

5    employed and working for an aggregate of 3,769 months in the putative class period. (Izuel Decl.

6    ¶32.)

7    71.    Based upon a conservative assumption of $10 per month of business expenses

8    incurred but not reimbursed, this claim places $37,690.00 in controversy. (Izuel Decl. ¶33.)

9    **5.      Plaintiff's wage statement claim places $761,700.00 in controversy.**

10   72.    Plaintiff alleges Defendant's alleged failure to provide compliant wage statements to

11   Plaintiff and the putative classes was "knowingly and intentionally" in violation of Labor Code

12   section 226 and seeks penalties under that statute. (Complaint, ¶¶3-4, 80-85.)

13   73.    Under section 226(e)(1), an employee suffering injury as a result of an intentional

14   failure to comply with section 226(a) is entitled to "recover the greater of all actual damages or

15   fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars

16   ($100) per employee for each violation in a subsequent pay period, not to exceed an aggregate

17   penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable

18   attorney's fees." Cal. Lab. Code § 226(e)(1).

19   74.    To calculate the amount in controversy for the wage statement claim, Izuel

20   identified putative class members who were provided a wage statement from February 8, 2022 to

21   September 15, 2023, assigned a penalty of $50 for the first pay period and $100 for each

22   subsequent pay period and limited each putative class member's penalty to $4,000.  (Izuel Decl.,

23   ¶¶37.)

24   75.    Plaintiff's claim for wage statement penalties is wholly derivative of her claims for

25   overtime and meal and rest period violations. As such, it puts at issue every wage statement for

26   every pay period during the one-year statutory period from February 8, 2022 to September 15,

27   2023.  See, e.g., *Gipson v. Champion Home Builders, Inc.*, No. 1:20-cv-00392-DAD-SKO, 2020

28   WL 4048503, at *8 (E.D. Cal. July 20, 2020) (100% assumed violation rate was reasonable based

17

on reasonable assumption that class members suffered at least one violation of meal or rest break violations per pay period); *Nunes v. Home Depot U.S.A., Inc.*, No. 2:19-cv-01207-JAM-DB, 2019 WL 4316903, at *3 (E.D. Cal. Sept. 12, 2019) (same)).

76.     Based on Plaintiff's allegations, the amount placed in controversy by Plaintiff's allegations on the wage statement claim is $761,700.00 amount.  (Izuel Decl. ¶ 37.)

### 4.     Plaintiff's waiting time claim places $1,385,412.99 in controversy

77.     Plaintiff alleges Defendant had a practice of knowingly refusing to pay all final wages owed to putative class members and that they are entitled to waiting time penalties pursuant to Labor Code section 203.  (Complaint, ¶¶3-4, 91-96.)

78.     If an employer fails to pay all wages due an employee at the time of termination, as required by Labor Code section 201, or within 72 hours after resignation, as required by Labor Code section 202, then the wages "shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced," for up to a maximum of 30 calendar days. *Id.* § 203. An employer may not be liable for these penalties if a good faith dispute exists as to whether the wages are owed. Further, to be liable for waiting time penalties, an employer's failure to pay wages within the statutory time frame must be willful. "A willful failure to pay wages within the meaning of Labor Code section 203 occurs when an employer intentionally fails to pay wages to an employee when those wages are due." Cal. Code Regs., tit. 8, § 13520.

79.     To calculate waiting time penalties, the employee's daily rate of pay is multiplied by a maximum of thirty (30) days, depending on the length of delay in receipt of wages. See *Mamika v. Barca*, 68 Cal. App. 4th 487, 493 (1998) (holding that the waiting time penalty is "equivalent to the employee's daily wages for each day she or he remained unpaid up to a total of 30 days" and noting that the "critical computation" is "the calculation of a daily wage rate, which can then be multiplied by the number of days of nonpayment, up to 30 days"); *Tajonar v. Echosphere, LLC*, No. 14cv2732-LAB (RBB), 2015 WL 4064642, at *4 (S.D. Cal. July 2, 2015). Where final "wages [due] are alleged to have not been paid, the full thirty-days may be used for each of the putative class members." *Marentes v. Key Energy Servs. Cal., Inc.*, No. 1:13-cv-02067 AWI JLT, 2015 WL 756516, at *9 (E.D. Cal. Feb. 23, 2015); see also *Crummie v. CertifiedSafety, Inc.*, No. 17 cv 03892

RS, 2017 WL 4544747, at *3 (N.D. Cal. Oct. 11, 2017) (holding that where plaintiff alleges "putative class members were owed (and are still owed)" wages, it is "completely reasonable to assume waiting time penalties accrued to the thirty-day limit").

80.     Defendant denies any such penalties are owed to Plaintiff or any putative class members. However, solely for purposes of this jurisdictional analysis, Defendant relies on Plaintiff's allegations that the penalties are owed.  Plaintiff's claim is derivative of his minimum wage, overtime, and meal and rest penalty claims, which Plaintiff alleges were a result of "a systemic pattern of wage and hour violations" by Plaintiff. (Complaint, ¶3.)

81.     Based on Plaintiff's allegations, it is reasonable to assume that 100% of the former, non-exempt employees (in the three-year section 203 limitations period) are entitled to thirty (30) days' wages. See *Crummie*, 2017 WL 4544747, at *3 (upholding assumption that "waiting time penalties accrued to the thirty-day limit" based on allegations of a pattern or practice of withholding wages owed); *Archuleta v. Avcorp Composite Fabrication, Inc.*, No. CV 18-8106 PSG (FFMx), 2018 WL 6382049, at *5 (C.D. Cal. Dec. 6, 2018) (finding that an assumption of the maximum thirty-day waiting time penalties was reasonable where "[t]he complaint's claim for waiting time penalties appears to be at least in part based on an allegation that Defendants never paid the 'overtime wages, minimum wages, and meal period violation [payments]' the employees were due."); *Avila v. Rue21, Inc.*, 432 F. Supp. 3d 1175, 1188 (E.D. Cal. 2020) ("Because Plaintiff is asking for a maximum statutory penalty of 30 days, ... it is reasonable to assume based on the FAC that Plaintiff could obtain statutory penalty of maximum 30 days."); *Mariscal v. Ariz. Tile*, LLC, No. 8:20-cv-02071-JLS-KES, 2021 WL 1400892, at *3 (C.D. Cal. Apr. 14, 2021) (same).) *Chavez v. Pratt (Robert Mann Packaging), LLC*, No. 19-CV-00719-NC, 2019 WL 1501576, at *4 (N.D. Cal. Apr. 5, 2019) ("By tying the unpaid final wage claim to his other claims, Chavez makes Pratt's assumption of 100% violation for unpaid wages reasonable—that is, if every putative class member incurred damages for at least one other claim in the complaint, every class member who departed Pratt during the statutory period was due unpaid wages."); *Mackall v. Healthsource Glob. Staffing, Inc.*, 2016 WL 4579099 (N.D. Cal. Sept. 2, 2016) (finding that "allegations of willful failure to timely pay final wages (based on alleged overtime and meal and rest break violations)"

support an estimated 100% violation rate for waiting time penalties). Thus, Defendant appropriately calculates potential waiting time penalties using a 100% violation rate.

82.     Thus, to calculate the amount in controversy for the waiting time penalty claim, Izuel analyzed the business records of Defendant for the putative class members to determine the number of former employees in the putative class. (Izuel Decl. ¶¶ 8, 34.) Izuel used the average hours worked per day. (Izuel Decl. ¶34.) She then calculated thirty (30) days wages at the average wage rate paid to employees. (*Id.*)

83.     Based on Plaintiff's allegations, the amount in controversy on the waiting time penalty claim is $1,385,412.99 amount. (*Id.* ¶¶ 35.)

**5.     Potential future attorney's fees in controversy total $1.525,014.11.**

84.     Plaintiff explicitly seeks attorneys' fees should he recover for any of the claims in this action. (See Complaint, ¶¶36, 55, 79, 84, 106, and Prayer for Relief section.) Prospective attorneys' fees are properly included in the amount in controversy for purposes of evaluating CAFA jurisdiction. See *Arias*, 936 F.3d at 922 ("[W]hen a statute or contract provides for the recovery of attorneys' fees, prospective attorneys' fees must be included in the assessment of the amount in controversy."). Under the Ninth Circuit's well-established precedent, twenty-five (25) percent of the common fund is generally used as a benchmark for an award of attorneys' fees. See *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011); *Barcia v. Contain-A-Way, Inc.*, No. 07cv938 IEG JMA, 2009 WL 587844, at *5 (S.D. Cal. Mar. 6, 2009) ("In wage and hour cases, '[t]wenty-five percent is considered a benchmark for attorneys' fees in common fund cases.'") (quoting *Hopson v. Hanesbrands Inc.*, No. CV-08-0844 EDL, 2008 WL 3385452, at *4 (N.D. Cal. Aug. 8, 2008)); *Lucas v. Michael Kors Inc.*, No. CV 18-1608-MWF (MRWx), 2018 WL 2146403, at *12 (C.D. Cal. May 9, 2018) (collecting cases applying a 25% benchmark in CAFA wage and hour cases).

85.     Defendant has established the total amount in controversy, exclusive of attorneys' fees is $6,100,056.44.  (Izuel Decl., ¶41.) Plaintiff has not indicated she will seek less than twenty-five (25) percent of a common fund in attorneys' fees. Defendant denies any such attorneys' fees are owed to Plaintiff or putative class members. However, solely for purposes of this jurisdictional

analysis, Defendant relies on Plaintiff's allegations that the attorneys' fees are owed.  Given the valuation of this matter, the attorneys' fees portion is valued at $1,525,014.11, and also supports this removal. (Izuel Decl. ¶42.)

**6.      The Amount in Controversy Far Exceeds $5,000,000**

The total amount placed in controversy is summarized as follows:

| Claim | Amount in Controversy |
|---|---|
| Overtime | $410,359.05 |
| Meal breaks | $618,942.85 |
| Rest breaks | $653,878.85 |
| Wage statements | $761,700.00 |
| Failure to Pay In Timely Manner | $1,958,500.00 |
| Failure to Pay All Wages at Termination | $1,385,41.99 |

Total Placed in Controversy by Claims = $6,100,056.44

Attorney fees at 25%    $1,525,014.11

86.      Plaintiff's allegations therefore place more than the requisite five million dollars ($5,000,000) in controversy. The jurisdictional amount-in-controversy requirement is met, and removal to this Court is proper under CAFA.

**III.      DEFENDANT HAS SATISFIED THE REQUIREMENTS OF 28 U.S.C. §1446**

87.      In accordance with 28 U.S.C. § 1446(a), this Notice of Removal is filed in the District Court of the United States in which this action is pending. The Superior Court of California, County of Sacramento, is located within the Eastern District of California, Sacramento Division. Therefore, venue is proper in this Court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. §§ 84(a) and 1441(a).

88.      In accordance with 28 U.S.C. § 1446(a), copies of all process, pleadings, orders, and other papers served upon Defendant are attached hereto as **Exhibit A**.

89.      In accordance with 28 U.S.C. § 1446(d), Defendant's counsel shall serve Plaintiff with a copy of this Notice of Removal and will file a Notice with the Clerk for the Sacramento

County Superior Court. Defendant shall promptly file a Notice of Compliance of these requirements in this Court promptly after completion.

90.     As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently files its Certificate of Interested Parties with this filing of the Notice of Removal.

## IV.     CONCLUSION

91.     For the foregoing reasons, Defendant hereby removes the above-entitled action to the United States District Court for the Eastern District of California.

92.     In the event this Court has any questions regarding the propriety of this Notice of Removal, Defendant requests this Court set an evidentiary hearing so that they may have an opportunity to more fully brief the Court on the basis of this removal.

DATED:  September 22, 2023

OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.


By:  /s/ Alexandra M. Asterlin
     Michael J. Nader
     Alexandra Asterlin
     Paul M. Smith

     Attorneys for Defendant
     ROADSAFE TRAFFIC SYSTEMS, INC.

### PROOF OF SERVICE

I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made.  My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814. My email address is: noreen.witt@ogletree.com.

On September 22, 2023, I served the following document(s):

**DEFENDANT ROADSAFE TRAFFIC SYSTEMS, INC.'S NOTICE OF REMOVAL OF STATE COURT ACTION TO FEDERAL COURT**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

| | |
|---|---|
| Samuel A. Wong | Attorneys for Plaintiff |
| Kashif Haque | ADRIANA MAGDALENA RAMOS |
| Jessica L. Campbell | |
| AEGIS LAW FIRM, PC | |
| 9811 Irvine Center Drive, Suite 100 | |
| Irvine, CA  92618 | |
| Telephone:      (949) 379-6250 | |
| Facsimile:(949) 379-6251 | |
| Email:      swong@aegislawfirm.com | |
|                 khaque@aegislawfirm.com | |
|                 jcampbell@aegislawfirm.com | |

☒ **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☒ (Federal)      I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on September 22, 2023, at Sacramento, California.

*Noreen F. Witt*
NOREEN F. WITT

# EXHIBIT A

CM-010

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):* | FOR COURT USE ONLY |
|---|---|
| Jessica L. Campbell, Esq. SBN 280626<br>AEGIS LAW FIRM, P.C.<br>9811 Irvine Center Drive, Suite 100<br>Irvine, CA 92618 | FILED<br>Superior Court Of California,<br>Sacramento<br>02/08/2023<br>vbloxson<br>By _____, Deputy<br>Case Number:<br>34-2023-00334458 |

TELEPHONE NO.: 949-379-6250        FAX NO.: 949-379-6251
ATTORNEY FOR *(Name):* Plaintiff Adriana Magdalena Ramos

SUPERIOR COURT OF CALIFORNIA, COUNTY OF  Sacramento
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Schaber Courthouse

CASE NAME:
Adriana Magdalena Ramos v. RoadSafe Traffic Systems, Inc.

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER: |
|---|---|---|---|---|
| [✓] **Unlimited** (Amount demanded exceeds $25,000) | [ ] **Limited** (Amount demanded is $25,000 or less) | [ ] **Counter** [ ] **Joinder**<br>Filed with first appearance by defendant (Cal. Rules of Court, rule 3.402) | | JUDGE:<br><br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

**1. Check one box below for the case type that best describes this case:**

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[✓] Other employment (15)

**Contract**
[ ] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

**2.** This case [✓] is [ ] is not   complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
a. [ ] Large number of separately represented parties       d. [✓] Large number of witnesses
b. [✓] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve       e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
c. [✓] Substantial amount of documentary evidence       f. [ ] Substantial postjudgment judicial supervision

**3.** Remedies sought *(check all that apply):* a. [✓] monetary    b. [ ] nonmonetary; declaratory or injunctive relief    c. [ ] punitive
**4.** Number of causes of action *(specify):*  Nine
**5.** This case [✓] is [ ] is not   a class action suit.
**6.** If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date:  February 8, 2023

Jessica L. Campbell
_____
(TYPE OR PRINT NAME)                                     (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on **all** other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |

BY FAX

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
 Damage/Wrongful Death
Uninsured Motorist (46) (*if the
 case involves an uninsured
 motorist claim subject to
 arbitration, check this item
 instead of Auto*)

**Other PI/PD/WD (Personal Injury/
Property Damage/Wrongful Death)
Tort**
Asbestos (04)
 Asbestos Property Damage
 Asbestos Personal Injury/
  Wrongful Death
Product Liability (*not asbestos or
 toxic/environmental*) (24)
Medical Malpractice (45)
 Medical Malpractice–
  Physicians & Surgeons
 Other Professional Health Care
  Malpractice
Other PI/PD/WD (23)
 Premises Liability (e.g., slip
  and fall)
 Intentional Bodily Injury/PD/WD
  (e.g., assault, vandalism)
 Intentional Infliction of
  Emotional Distress
 Negligent Infliction of
  Emotional Distress
 Other PI/PD/WD

**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
 Practice (07)
Civil Rights (e.g., discrimination,
 false arrest) (*not civil
 harassment*) (08)
Defamation (e.g., slander, libel)
 (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
 Legal Malpractice
 Other Professional Malpractice
  (*not medical or legal*)
Other Non-PI/PD/WD Tort (35)

**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
 Breach of Rental/Lease
  Contract (*not unlawful detainer
  or wrongful eviction*)
 Contract/Warranty Breach–Seller
  Plaintiff (*not fraud or negligence*)
 Negligent Breach of Contract/
  Warranty
 Other Breach of Contract/Warranty
Collections (e.g., money owed, open
 book accounts) (09)
 Collection Case–Seller Plaintiff
 Other Promissory Note/Collections
  Case
Insurance Coverage (*not provisionally
 complex*) (18)
 Auto Subrogation
 Other Coverage
Other Contract (37)
 Contractual Fraud
 Other Contract Dispute

**Real Property**
Eminent Domain/Inverse
 Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
 Writ of Possession of Real Property
 Mortgage Foreclosure
 Quiet Title
 Other Real Property (*not eminent
  domain, landlord/tenant, or
  foreclosure*)

**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) (*if the case involves illegal
 drugs, check this item; otherwise,
 report as Commercial or Residential*)

**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
 Writ–Administrative Mandamus
 Writ–Mandamus on Limited Court
  Case Matter
 Writ–Other Limited Court Case
  Review
Other Judicial Review (39)
 Review of Health Officer Order
 Notice of Appeal–Labor
  Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.
Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
 (*arising from provisionally complex
 case type listed above*) (41)

**Enforcement of Judgment**
Enforcement of Judgment (20)
 Abstract of Judgment (Out of
  County)
 Confession of Judgment (*non-
  domestic relations*)
 Sister State Judgment
 Administrative Agency Award
  (*not unpaid taxes*)
 Petition/Certification of Entry of
  Judgment on Unpaid Taxes
 Other Enforcement of Judgment
  Case

**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint (*not specified
 above*) (42)
 Declaratory Relief Only
 Injunctive Relief Only (*non-
  harassment*)
 Mechanics Lien
 Other Commercial Complaint
  Case (*non-tort/non-complex*)
 Other Civil Complaint
  (*non-tort/non-complex*)

**Miscellaneous Civil Petition**
Partnership and Corporate
 Governance (21)
Other Petition (*not specified
 above*) (43)
 Civil Harassment
 Workplace Violence
 Elder/Dependent Adult
  Abuse
 Election Contest
 Petition for Name Change
 Petition for Relief From Late
  Claim
 Other Civil Petition

# SUMMONS
## *(CITACION JUDICIAL)*

**SUM-100**

FILED
Superior Court Of California,
Sacramento
02/09/2023
V.Bloxson
By:_____, Deputy
Case Number:
34-2023-00334458

**FOR COURT USE ONLY**
*(SOLO PARA USO DE LA CORTE)*

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
ROADSAFE TRAFFIC SYSTEMS, INC.; and DOES 1 through 20, inclusive,

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

ADRIANA MAGDALENA RAMOS, individually and on behalf of all others similarly situated,

NOTICE! You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is: *(El nombre y dirección de la corte es):* Superior Court of the State of California, County of Sacramento 720 9th Street, Sacramento, CA 95814 | CASE NUMBER: *(Número del Caso):* |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is: *(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*

Jessica L. Campbell, AEGIS LAW FIRM, P.C., 9811 Irvine Center Drive, Suite 100, Irvine, CA 92618, 949-379-6250

| DATE: *(Fecha)* FEB 0 9 2023 | Clerk, by *(Secretario)* V. BLOXSON | , Deputy *(Adjunto)* |
|---|---|---|

*(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)*
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010).)*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*
3. ☐ on behalf of *(specify):*

   under: ☐ CCP 416.10 (corporation)  ☐ CCP 416.60 (minor)
   ☐ CCP 416.20 (defunct corporation)  ☐ CCP 416.70 (conservatee)
   ☐ CCP 416.40 (association or partnership)  ☐ CCP 416.90 (authorized person)
   ☐ other *(specify):*
4. ☐ by personal delivery on *(date)*

**Page 1 of 1**

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
*www.courts.ca.gov*

BY FAX

**AEGIS LAW FIRM, PC**
SAMUEL A. WONG, State Bar No. 217104
KASHIF HAQUE, State Bar No. 218672
JESSICA L. CAMPBELL, State Bar No. 280626
9811 Irvine Center Drive, Suite 100
Irvine, California 92618
Telephone: (949) 379-6250
Facsimile: (949) 379-6251
Email:  jcampbell@aegislawfirm.com

Attorneys for Plaintiff Adriana Magdalena Ramos, individually,
and on behalf of all others similarly situated.

## SUPERIOR COURT OF THE STATE OF CALIFORNIA

## FOR THE COUNTY OF SACRAMENTO

| | |
|---|---|
| ADRIANA MAGDALENA RAMOS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>ROADSAFE TRAFFIC SYSTEMS, INC.; and DOES 1 through 20, inclusive,<br><br>        Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT FOR:**<br><br>1.  Failure to Pay Minimum Wages;<br><br>2.  Failure to Pay Overtime Wages;<br><br>3.  Failure to Provide Meal Periods;<br><br>4.  Failure to Permit Rest Breaks;<br><br>5.  Failure to Reimburse Business Expenses;<br><br>6.  Failure to Provide Accurate Itemized Wage Statements;<br><br>7.  Failure to Pay Wages Timely During Employment;<br><br>8.  Failure to Pay All Wages Due Upon Separation of Employment; and<br><br>9.  Violation of Business and Professions Code §§ 17200, *et seq.*<br><br>**DEMAND FOR JURY TRIAL** |

CLASS ACTION COMPLAINT

Plaintiff Adriana Magdalena Ramos, individually and on behalf of others similarly situated, alleges as follows:

## NATURE OF ACTION AND INTRODUCTORY STATEMENT

1. Plaintiff Adriana Magdalena Ramos ("Plaintiff") brings this putative class action against defendants RoadSafe Traffic Systems, Inc., and DOES 1 through 20, inclusive (collectively, "Defendants"), on Plaintiff's own behalf and on behalf of a putative class of California citizens who are and were employed by Defendants as non-exempt employees throughout California.

2. Defendants provide services or goods throughout California.

3. Through this action, Plaintiff alleges that Defendants engaged in a systematic pattern of wage and hour violations under the California Labor Code and Industrial Welfare Commission ("IWC") Wage Orders, all of which contribute to Defendants' deliberate unfair competition.

4. Plaintiff is informed and believe, and thereon alleges, that Defendants have increased their profits by violating state wage and hour laws by, among other things:

    (a) failing to pay all wages (including minimum wages and overtime wages);

    (b) failing to provide lawful meal periods or compensation in lieu thereof;

    (c) failing to authorize or permit lawful rest breaks or provide compensation in lieu thereof;

    (d) failing to reimburse necessary business-related costs;

    (e) failing to provide accurate itemized wage statements;

    (f) failing to pay wages timely during employment; and

    (g) failing to pay all wages due upon separation of employment.

5. Plaintiff seeks monetary relief against Defendants on behalf of Plaintiff and all others similarly situated in California to recover, among other things, unpaid wages, un-reimbursed business expenses, benefits, interest, attorneys' fees, costs and expenses, and penalties pursuant to Labor Code §§ 201, 202, 203, 204, 210, 226, 226.7, 510, 512, 1182.12, 1194, 1194.2, 1197, 1198, 2800, and 2802, and Code of California Civil Procedure § 1021.5.

-1-

**JURISDICTION AND VENUE**

6.     This is a class action pursuant to California Code of Civil Procedure § 382. The monetary damages and restitution sought by Plaintiff exceed the minimal jurisdictional limits of the Superior Court and will be established according to proof at trial.

7.     This Court has jurisdiction over this action pursuant to the California Constitution, Article VI, § 10, which grants the Superior Court original jurisdiction in all causes except those given by statutes to other courts. The statutes under which this action is brought do not specify any other basis for jurisdiction.

8.     This Court has jurisdiction over all Defendants because, upon information and belief, they are citizens of California, have sufficient minimum contacts in California, or otherwise intentionally avail themselves of the California market so as to render the exercise of jurisdiction over them by the California courts consistent with traditional notions of fair play and substantial justice.

9.     Venue is proper in this Court because, upon information and belief, Defendants reside, transact business, or have offices in this county, and the acts and omissions alleged herein took place in this county.

**THE PARTIES**

10.     Plaintiff is a resident of California and worked for Defendants during the relevant time periods as alleged herein.

11.     Plaintiff is informed and believes, and thereon alleges that at all times hereinafter mentioned, Defendants were and are subject to the Labor Code and IWC Wage Orders as employers, whose employees were and are engaged throughout this county and the State of California.

12.     Plaintiff is unaware of the true names or capacities of the defendants sued herein under the fictitious names DOES 1 through 20, but will seek leave of this Court to amend this Complaint and serve such fictitiously named defendants once their names and capacities become known.

-2-

13.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 20 are or were the partners, agents, owners, shareholders, managers, or employees of Defendants at all relevant times.

14.     Plaintiff is informed and believes, and thereon alleges, that each defendant acted in all respects pertinent to this action as the agent of the other defendant, carried out a joint scheme, business plan, or policy in all respects pertinent hereto, and the acts of each defendant are legally attributable to the other defendant. Furthermore, defendants in all respects acted as the employer and/or joint employer of Plaintiff and the class members.

15.     Plaintiff is informed and believes, and thereon alleges, that each and all of the acts and omissions alleged herein were performed by, or are attributable to, Defendants and/or DOES 1 through 20, acting as the agent or alter ego for the other, with legal authority to act on the other's behalf. The acts of any and all Defendants were in accordance with, and represent, the official policy of Defendants.

16.     At all relevant times, Defendants, and each of them, acted within the scope of such agency or employment, or ratified each and every act or omission complained of herein. At all relevant times, Defendants, and each of them, aided and abetted the acts and omissions of each and all the other Defendants in proximately causing the damages herein alleged.

17.     Plaintiff is informed and believes, and thereon alleges, that each of said Defendants is in some manner intentionally, negligently, or otherwise responsible for the acts, omissions, occurrences, and transactions alleged herein.

**CLASS ACTION ALLEGATIONS**

18.     Plaintiff brings this action under Code of Civil Procedure § 382 on Plaintiff's own behalf and on behalf of all others similarly situated who were affected by Defendants' Labor Code, Business and Professions Code §§ 17200, and IWC Wage Order violations.

19.     All claims alleged herein arise under California law for which Plaintiff seeks relief authorized by California law.

20.     Plaintiff's proposed class consists of and is defined as follows:

-3-

<u>Class</u>

All California citizens currently or formerly employed by Defendants as non-exempt employees in the State of California at any time between August 14, 2018[1] and the date of class certification ("Class").

21.  Plaintiff also seeks to certify the following subclasses of employees:

<u>Waiting Time Subclass</u>

All members of the Class who separated their employment with Defendant at any time between August 14, 2019 and the date of class certification ("Waiting Time Subclass").

22.  Plaintiff reserves the right to modify or re-define the Class, establish additional subclasses, or modify or re-define any class or subclass definition as appropriate based on investigation, discovery, and specific theories of liability.

23.  Members of the Class and the Waiting Time Subclass described above will be collectively referred to as "Class Members."

24.  There are common questions of law and fact as to the Class Members that predominate over any questions affecting only individual members including, but not limited to, the following:

(a)  Whether Defendants failed to pay Plaintiff and Class Members all wages (including minimum wages and overtime wages) for all hours worked by Plaintiff and Class Members.

(b)  Whether Defendants required Plaintiff and Class Members to work over eight (8) hours per day, over twelve (12) hours per day, and/or over forty (40) hours per week and failed to pay them proper overtime compensation for all overtime hours worked.

---

[1] The statute of limitations for this matter was tolled between April 6, 2020 and October 1, 2020 pursuant to Cal. Rules of Court, Appendix I, Emergency Rule No. 9.

-4-

1      (c)    Whether Defendants deprived Plaintiff and Class Members of timely meal

2              periods or required Plaintiff and Class Members to work through meal

3              periods without legal compensation.

4      (d)    Whether Defendants deprived Plaintiff and Class Members of rest breaks

5              or required Plaintiff and Class Members to work through rest breaks.

6      (e)    Whether Defendants failed to reimburse Plaintiff and Class Members for

7              necessary business-related costs expended for the benefit of Defendants.

8      (f)    Whether Defendants failed to provide Plaintiff and Class Members

9              accurate itemized wage statements.

10     (g)    Whether Defendants failed to pay wages timely to Plaintiff and Class

11            Members;

12     (h)    Whether Defendants failed to timely pay the Waiting Time Subclass all

13            wages due upon termination or within seventy-two (72) hours of

14            resignation.

15     (i)    Whether Defendants' conduct was willful or reckless.

16     (j)    Whether Defendants engaged in unfair business practices in violation of

17            Business and Professions Code §§ 17200, *et seq.*

18     25.    There is a well-defined community of interest in this litigation and the proposed

19 Class and subclasses are readily ascertainable:

20     (a)    <u>Numerosity</u>: The Class Members are so numerous that joinder of all

21 members is impractical. Although the members of the Class are unknown to Plaintiff at this time,

22 on information and belief, the Class is estimated to be greater than fifty (50) individuals. The

23 identities of the Class Members are readily ascertainable by inspection of Defendants'

24 employment and payroll records.

25     (b)    <u>Typicality</u>: Plaintiff's claims (or defenses, if any) are typical of the claims

26 (or defenses, if any) of the Class Members because Defendants' failure to comply with the

27 provisions of California's wage and hour laws entitled each Class Member to similar pay,

28 benefits, and other relief. The injuries sustained by Plaintiff are also typical of the injuries

1   sustained by the Class Members, because they arise out of and are caused by Defendants'

2   common course of conduct as alleged herein.

3        (c)   Adequacy: Plaintiff will fairly and adequately represent and protect the

4   interests of all Class Members because it is in Plaintiff's best interest to prosecute the claims

5   alleged herein to obtain full compensation and penalties due. Plaintiff's attorneys, as proposed

6   class counsel, are competent and experienced in litigating large employment class actions and

7   versed in the rules governing class action discovery, certification, and settlement. Plaintiff has

8   incurred and, throughout the duration of this action, will continue to incur attorneys' fees and

9   costs that have been and will be necessarily expended for the prosecution of this action for the

10  substantial benefit of the Class Members.

11       (d)   Superiority: The nature of this action makes use of class action

12  adjudication superior to other methods. A class action will achieve economies of time, effort, and

13  expense as compared with separate lawsuits and will avoid inconsistent outcomes because the

14  same issues can be adjudicated in the same manner for the entire Class and Waiting Time

15  Subclass at the same time. If appropriate, this Court can, and is empowered to, fashion methods

16  to efficiently manage this case as a class action.

17       (e)   Public Policy Considerations: Employers in the State of California violate

18  employment and labor laws every day. Current employees are often afraid to assert their rights

19  out of fear of direct or indirect retaliation. Former employees are fearful of bringing actions

20  because they believe their former employers might damage their future endeavors through

21  negative references and/or other means. Class actions provide class members who are not named

22  in the complaint with a type of anonymity that allows for the vindication of their rights while

23  affording them privacy protections.

24              **GENERAL ALLEGATIONS**

25       26.   At all relevant times mentioned herein, Defendants employed Plaintiff and other

26  California residents as non-exempt employees throughout California at Defendants' California

27  business location(s).

28       27.   Defendants continue to employ non-exempt employees within California.

-6-

28.     Plaintiff is informed and believes, and thereon alleges, that at all times herein mentioned, Defendants were advised by skilled lawyers, employees, and other professionals who were knowledgeable about California's wage and hour laws, employment and personnel practices, and the requirements of California law.

29.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive wages for all time worked (including minimum wages and overtime wages) and that they were not receiving all wages earned for work that was required to be performed. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members were not paid all wages (including minimum wages and overtime wages) for all hours worked at the correct rate and within the correct time.

30.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive all required meal periods or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when they did not receive a timely, uninterrupted meal period. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members did not receive all meal periods or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when they did not receive a timely, uninterrupted meal period.

31.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to receive all rest breaks or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when a rest break was late, missed, or interrupted. In violation of the Labor Code and IWC Wage Orders, Plaintiff and Class Members did not receive all rest breaks or payment of one (1) additional hour of pay at Plaintiff's and Class Members' regular rate of pay when a rest break was missed, late, or interrupted.

32.     Plaintiff is informed and believes, and thereon alleges, that Defendants knew or should have known that Plaintiff and Class Members were entitled to reimbursement and/or indemnification for all necessary business expenditures or losses as a direct consequence of the discharge of their duties, or of their obedience to the directions of Defendants. In violation of the

-7-

1    Labor Code and IWC Wage Orders, Plaintiff and Class Members incurred necessary business

2    expenses or losses, but were not reimbursed nor indemnified of such expenses or losses that were

3    incurred as a direct consequence of the discharge of their duties, or of their obedience to the

4    directions of Defendants.

5         33.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

6    should have known that Plaintiff and Class Members were entitled to receive itemized wage

7    statements that accurately showed the following information pursuant to the Labor Code: (1)

8    gross wages earned; (2) total hours worked by the employee; (3) the number of piece-rate units

9    earned and any applicable piece rate if the employee is paid on a piece-rate basis; (4) all

10   deductions, provided that all deductions made on written orders of the employee may be

11   aggregated and shown as one item; (5) net wages earned; (6) the inclusive dates of the period for

12   which the employee is paid; (7) the name of the employee and only the last four digits of his or

13   her social security number or an employee identification number other than a social security

14   number; (8) the name and address of the legal entity that is the employer; and (9) all applicable

15   hourly rates in effect during the pay period and the corresponding number of hours worked at

16   each hourly rate by the employee. In violation of the Labor Code, Plaintiff and Class Members

17   were not provided with accurate itemized wage statements.

18        34.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

19   should have known that the Waiting Time Subclass was entitled to timely payment of wages due

20   upon separation of employment. In violation of the Labor Code, the Waiting Time Subclass did

21   not receive payment of all wages within the permissible time periods.

22        35.   Plaintiff is informed and believes, and thereon alleges, that Defendants knew or

23   should have known they had a duty to compensate Plaintiff and Class Members, and Defendants

24   had the financial ability to pay such compensation but willfully, knowingly, and intentionally

25   failed to do so in order to increase Defendants' profits.

26        36.   Therefore, Plaintiff brings this lawsuit seeking monetary and injunctive relief

27   against Defendants on Plaintiff's own behalf and on behalf of all Class Members to recover,

28   among other things, unpaid wages (including minimum wages and overtime wages), unpaid meal

-8-

period premium payments, unpaid rest period premium payments, unreimbursed business expenditures, interest, attorneys' fees, penalties, costs, and expenses.

### FIRST CAUSE OF ACTION

### FAILURE TO PAY MINIMUM WAGES

(Violation of Labor Code §§ 1194, 1194.2, and 1197; Violation of IWC Wage Order §3-4)

37.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

38.    Labor Code §§ 1194 and 1197 provide that the minimum wage for employees fixed by the IWC is the minimum wage to be paid to employees, and the payment of a lesser wage than the minimum so fixed is unlawful.

39.    Plaintiff and Class Members were employees entitled to the protections of Labor Code §§ 1194 and 1197.

40.    During the relevant time period, Defendants failed to pay Plaintiff and Class Members all wages owed when Defendants did not pay minimum wage for all hours worked.

41.    During the relevant time period, Defendants failed to pay at least minimum wage to Plaintiff and Class Members for all hours worked pursuant to Labor Code §§ 1194 and 1197.

42.    Defendants' failure to pay Plaintiff and Class Members the required minimum wage violates Labor Code §§ 1194 and 1197. Pursuant to these sections, Plaintiff and Class Members are entitled to recover the unpaid balance of their minimum wage compensation as well as interest, costs, and attorneys' fees.

43.    Pursuant to Labor Code § 1194.2, Plaintiff and Class Members are entitled to recover liquidated damages in an amount equal to the wages unlawfully unpaid and the accrued interest thereon.

### SECOND CAUSE OF ACTION

### FAILURE TO PAY OVERTIME

(Violation of Labor Code §§ 510, 1194, and 1198; Violation of IWC Wage Order § 3)

44.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

-9-

45.     Labor Code § 1198 and the applicable IWC Wage Order provide that it is unlawful to employ persons without compensating them at a rate of pay either one and one-half (1½) or two (2) times the person's regular rate of pay, depending on the number of hours worked by the person on a daily or weekly basis.

46.     Specifically, the applicable IWC Wage Orders provide that Defendants are and were required to pay overtime compensation to Plaintiff and Class Members at the rate of one and one-half times (1½) their regular rate of pay when working and for all hours worked in excess of eight (8) hours in a day or more than forty (40) hours in a workweek and for the first eight (8) hours of work on the seventh day of work in a workweek.

47.     The applicable IWC Wage Orders further provide that Defendants are and were required to pay overtime compensation to Plaintiff and Class Members at a rate of two times their regular rate of pay when working and for all hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours on the seventh day of work in a workweek.

48.     California Labor Code § 510 codifies the right to overtime compensation at one and one-half (1½) times the regular hourly rate for hours worked in excess of eight (8) hours in a day or forty (40) hours in a week and for the first eight (8) hours worked on the seventh consecutive day of work, and overtime compensation at twice the regular hourly rate for hours worked in excess of twelve (12) hours in a day or in excess of eight (8) hours in a day on the seventh day of work in a workweek.

49.     Labor Code § 510 and the applicable IWC Wage Orders provide that employment of more than six days in a workweek is only permissible if the employer pays proper overtime compensation as set forth herein.

50.     Plaintiff and Class Members were employees entitled to the protections of California Labor Code §§ 510 and 1194.

51.     During the relevant time period, Defendants required Plaintiff and Class Members to work in excess of eight (8) hours in a day, forty (40) hours in a week, and/or on a seventh consecutive day of work, entitling them to overtime wages.

-10-

52.    During the relevant time period, Defendants failed to pay Plaintiff and Class Members overtime wages for all overtime hours worked. To the extent these hours qualify for the payment of overtime wages, Plaintiff and Class Members were not paid proper overtime wages.

53.    In violation of California law, Defendants knowingly and willfully refused to perform their obligations and compensate Plaintiff and Class Members for all wages earned and all hours worked.

54.    Defendants' failure to pay Plaintiff and Class Members the unpaid balance of overtime compensation, as required by California law, violates the provisions of Labor Code §§ 510 and 1198, and is therefore unlawful.

55.    Pursuant to Labor Code § 1194, Plaintiff and Class Members are entitled to recover their unpaid overtime and double time compensation as well as interest, costs, and attorneys' fees.

**THIRD CAUSE OF ACTION**

**<u>FAILURE TO PROVIDE MEAL PERIODS</u>**

(Violation of Labor Code §§ 226.7 and 512; Violation of IWC Wage Order § 11)

56.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

57.    Labor Code § 226.7 provides that no employer shall require an employee to work during any meal period mandated by the IWC Wage Orders.

58.    Section 11 of the applicable IWC Wage Order states, "[n]o employer shall employ any person for a work period of more than five (5) hours without a meal period of not less than 30 minutes, except that when a work period of not more than six (6) hours will complete the day's work the meal period may be waived by mutual consent of the employer and the employee."

59.    Labor Code § 512(a) provides that an employer may not require, cause, or permit an employee to work for a period of more than five (5) hours per day without providing the employee with an uninterrupted meal period of not less than thirty (30) minutes, except that if

-11-

1   the total work period per day of the employee is not more than six (6) hours, the meal period may
2   be waived by mutual consent of both the employer and the employee.

3       60.     Labor Code § 512(a) also provides that an employer may not employ an employee
4   for a work period of more than ten (10) hours per day without providing the employee with a
5   second meal period of not less than thirty (30) minutes, except that if the total hours worked is no
6   more than twelve (12) hours, the second meal period may be waived by mutual consent of the
7   employer and the employee only if the first meal period was not waived.

8       61.     During the relevant time period, Plaintiff and Class Members did not receive
9   compliant meal periods for working more than five (5) and ten (10) hours per day because their
10  meal periods were missed, late, short, interrupted, and/or they were not permitted to take a
11  second meal period.

12      62.     Labor Code § 226.7(b) and section 11 of the applicable IWC Wage Order require
13  an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of
14  compensation for each work day that a compliant meal period is not provided.

15      63.     At all relevant times, Defendants failed to pay Plaintiff and Class Members meal
16  period premiums for missed, late, and/or short meal periods pursuant to Labor Code § 226.7(b)
17  and section 11 of the applicable IWC Wage Order.

18      64.     As a result of Defendants' failure to pay Plaintiff and Class Members an
19  additional hour of pay for each day a compliant meal period was not provided, Plaintiff and
20  Class Members suffered and continue to suffer a loss of wages and compensation.

21                           **FOURTH CAUSE OF ACTION**
22                           **FAILURE TO PERMIT REST BREAKS**
23          (Violation of Labor Code §§ 226.7; Violation of IWC Wage Order § 12)

24      65.     Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as
25  though fully set forth herein.

26      66.     Labor Code § 226.7(a) provides that no employer shall require an employee to
27  work during any rest period mandated by the IWC Wage Orders.

28

-12-

67. Section 12 of the applicable IWC Wage Order states "[e]very employer shall authorize and permit all employees to take rest periods, which insofar as practicable shall be in the middle of each work period[,]" and the "[a]uthorized rest period time shall be based on the total hours worked daily at the rate of ten (10) minutes net rest time per four (4) hours or major fraction thereof[,]" unless the total daily work time is less than three and one-half (3½) hours.

68. During the relevant time period, Plaintiff and Class Members did not receive a ten (10) minute rest period for every four (4) hours or major fraction thereof worked, including working in excess of ten (10) hours in a day, because they were required to work through their rest periods and/or were not authorized to take their rest periods.

69. Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order requires an employer to pay an employee one (1) additional hour of pay at the employee's regular rate of compensation for each work day that a compliant rest period is not provided.

70. At all relevant times, Defendants failed to pay Plaintiff and Class Members rest period premiums for missed, late, and/or interrupted rest periods pursuant to Labor Code § 226.7(b) and section 12 of the applicable IWC Wage Order.

71. As a result of Defendants' failure to pay Plaintiff and Class Members an additional hour of pay for each day a compliant rest period was not provided, Plaintiff and Class Members suffered and continue to suffer a loss of wages and compensation.

### FIFTH CAUSE OF ACTION

### FAILURE TO REIMBURSE BUSINESS EXPENSES

(Violation of Labor Code §§ 2800, 2802)

72. Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

73. Labor Code § 2800 states that "[a]n employer shall in all cases indemnify his employee for losses caused by the employer's want of ordinary care."

74. Labor Code § 2802(a) states that "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct

-13-

1    consequence of the discharge of his or her duties, or of his or her obedience to the directions of

2    the employer . . . ."

3         75.    Labor Code § 2802(b) states that "[a]ll awards made by a court . . . for

4    reimbursement of necessary expenditures under this section shall carry interest at the same rate

5    as judgments in civil actions. Interest shall accrue from the date on which the employee incurred

6    the necessary expenditure or loss."

7         76.    Labor Code § 2802(c) states that "[f]or purposes of this section, the term

8    "necessary expenditures or losses" shall include all reasonable costs, including, but not limited

9    to, attorney's fees incurred by the employee enforcing the rights granted by this section."

10        77.    During the relevant time period, Plaintiff and Class Members incurred necessary

11   business-related costs that were not fully reimbursed by Defendants.

12        78.    In violation of Labor Code §§ 2800 and 2802, Defendants failed to reimburse or

13   indemnify Plaintiff and Class Members for their expenses due to Defendants' knowing and

14   intentional failure to reimburse necessary business expenditures in connection with Plaintiff's

15   and Class Members' work and job duties.

16        79.    As a direct result, Plaintiff and Class Members have suffered and continue to

17   suffer losses, and therefore seek complete reimbursement and indemnification of necessary

18   business expenditures or losses, interest thereon at the required rate, and all reasonable costs in

19   enforcing the rights under Labor Code § 2802, including, but not limited to attorneys' fees.

20                              **SIXTH CAUSE OF ACTION**

21        **FAILURE TO PROVIDE ACCURATE ITEMIZED WAGE STATEMENTS**

22              (Violation of Labor Code § 226; Violation of IWC Wage Order)

23        80.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as

24   though fully set forth herein.

25        81.    Labor Code § 226(a) requires Defendants to provide each employee with an

26   accurate wage statement in writing showing nine pieces of information, including, the following:

27   (1) gross wages earned, (2) total hours worked by the employee, (3) the number of piece-rate

28   units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all

                                        -14-

deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and the last four digits of his or her social security number or an employee identification number other than a social security number, (8) the name and address of the legal entity that is the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee.

82. During the relevant time period, Defendants have knowingly and intentionally failed to comply with Labor Code § 226(a) on wage statements that were provided to Plaintiff and Class Members. The deficiencies include, among other things, the failure to correctly state the gross and net wages earned, total hours worked, all applicable hourly rates in effect, and the number of hours worked at each hourly rate by Plaintiff and Class Members.

83. As a result of Defendants' knowing and intentional failure to comply with Labor Code § 226(a), Plaintiff and Class Members have suffered injury and damage to their statutorily-protected rights. Specifically, Plaintiff and Class Members are deemed to suffer an injury pursuant to Labor Code § 226(e) where, as here, Defendants intentionally violated Labor Code § 226(a). Plaintiff and Class Members were denied both their legal right to receive, and their protected interest in receiving, accurate itemized wage statements under Labor Code § 226(a). In addition, because Defendants failed to provide the accurate rates of pay on wage statements, Defendants prevented Plaintiff and Class Members from determining if all hours worked were paid at the appropriate rate and the extent of the underpayment. Plaintiff had to file this lawsuit in order to analyze the extent of the underpayment, thereby causing Plaintiff to incur expenses and lost time. Plaintiff would not have had to engage in these efforts and incur these costs had Defendants provided the accurate hours worked, wages earned, and rates of pay. This has also delayed Plaintiff's ability to demand and recover the underpayment of wages from Defendants.

84. Plaintiff and Class Members are entitled to recover from Defendants the greater of all actual damages caused by Defendants' failure to comply with Labor Code § 226(a) or fifty dollars ($50.00) for the initial pay period in which a violation occurred and one hundred dollars

-15-

1    ($100.00) per employee for each violation in subsequent pay periods in an amount not exceeding

2    four thousand dollars ($4,000.00) per employee, plus attorneys' fees and costs.

3         85.    Defendants' violations of California Labor Code § 226(a) prevented Plaintiff and

4    Class Members from knowing, understanding, and disputing the wages paid to them and resulted

5    in an unjustified economic enrichment to Defendants. As a result of Defendants' knowing and

6    intentional failure to comply with California Labor Code § 226(a), Plaintiff and Class Members

7    have suffered an injury, in the exact amount of damages and/or penalties to be shown according

8    to proof at trial.

9                          **SEVENTH CAUSE OF ACTION**

10                  **FAILURE TO PAY TIMELY DURING EMPLOYMENT**

11                       (Violation of Labor Code §§ 204, 210)

12        86.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as

13   though fully set forth herein.

14        87.    Pursuant to California Labor Code § 204, employees must be paid within a certain

15   number of days of the close of the pay period.

16        88.    During the relevant time period, Defendants failed to timely pay Plaintiffs and

17   Class Members wages earned during the pay period.

18        89.    Such a pattern, practice and uniform administration of corporate policy regarding

19   timely payment of wages as described herein is unlawful and creates an entitlement to recovery

20   by Plaintiff in a civil action, for the unpaid balance of the full amount of damages owed,

21   including interest thereon, penalties, attorneys' fees, and costs of suit according to the mandate of

22   California Labor Code § 210.

23        90.    As a direct and proximate cause of these violations, Class Members have been

24   damaged, in an amount to be determined at trial.

25   ///

26   ///

27   ///

28   ///

-16-

CLASS ACTION COMPLAINT

## EIGHTH CAUSE OF ACTION

### FAILURE TO PAY ALL WAGES DUE UPON SEPARATION OF EMPLOYMENT

(Violation of Labor Code §§ 201, 202, and 203)

91. Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

92. Labor Code §§ 201 and 202 provide that if an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately, and that if an employee voluntarily leaves his or her employment, his or her wages shall become due and payable not later than seventy-two (72) hours thereafter, unless the employee has given seventy-two (72) hours previous notice of an intention to quit, in which case the employee is entitled to his or her wages at the time of quitting.

93. During the relevant time period, Defendants willfully failed to pay the Waiting Time Subclass all their earned wages upon termination, either at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ.

94. Defendants' failure to pay the Waiting Time Subclass all their earned wages at the time of discharge or within seventy-two (72) hours of their leaving Defendants' employ is in violation of Labor Code §§ 201 and 202.

95. Labor Code § 203 provides that if an employer willfully fails to pay wages owed immediately upon discharge or resignation in accordance with Labor Code §§ 201 and 202, then the wages of the employee shall continue as a penalty from the due date at the same rate until paid or until an action is commenced; but the wages shall not continue for more than thirty (30) days.

96. Pursuant to Labor Code § 203, the Waiting Time Subclass is entitled to recover from Defendants the statutory penalty, which is defined as the Waiting Time Subclass members' regular daily wages at their regular hourly rate of pay for each day they were not paid, up to a maximum of thirty (30) days.

///

///

-17-

CLASS ACTION COMPLAINT

**NINTH CAUSE OF ACTION**

**VIOLATION OF BUSINESS AND PROFESSIONS CODE §§ 17200, *ET SEQ.***

(Violation of Business and Professions Code §§ 17200, *et seq.*)

97.    Plaintiff hereby re-alleges and incorporates by reference all paragraphs above as though fully set forth herein.

98.    California Business and Professions Code §§ 17200, *et seq.*, prohibits acts of unfair competition, which includes any "unlawful, unfair or fraudulent business act or practice . . . ."

99.    A violation of California Business and Professions Code §§ 17200, *et seq.*, may be predicated on a violation of any state or federal law. In the instant case, Defendants' policies and practices violated state law, causing Plaintiff and Class Members to suffer and continue to suffer injuries-in-fact.

100.    Defendants' policies and practices violated state law in at least the following respects:

       (a)    Failing to pay all wages earned (including minimum wage and overtime wages) to Plaintiff and Class Members at the proper rate and in a timely manner in violation of Labor Code §§ 204, 510, 1194, 1194.2, 1197, 1198.

       (b)    Failing to provide compliant meal periods without paying Plaintiff and Class Members premium wages for every day said meal periods were not provided in violation of Labor Code §§ 226.7 and 512.

       (c)    Failing to authorize or permit compliant rest breaks without paying Plaintiff and Class Members premium wages for every day said rest breaks were not authorized or permitted in violation of Labor Code § 226.7.

       (d)    Failing to reimburse Plaintiff and Class Members for necessary business-related expenses in violation of Labor Code §§ 2800 and 2802.

       (e)    Failing to provide Plaintiff and Class Members with accurate itemized wage statements in violation of Labor Code § 226.

-18-

(f)    Failing to timely pay all earned wages to the members of the Waiting Time Subclass upon separation of employment in violation of Labor Code §§ 201, 202, and 203.

101.    As alleged herein, Defendants systematically engaged in unlawful conduct in violation of the California Labor Code and IWC Wage Orders, such as failing to pay all wages (minimum and overtime wages), failing to provide meal periods and rest breaks or compensation in lieu thereof, failing to reimburse necessary business-related costs and expenses, failing to furnish accurate wage statements, and failing to pay all wages due and owing upon separation of employment in a timely manner to the Waiting Time Subclass, all in order to decrease their costs of doing business and increase their profits.

102.    At all relevant times herein, Defendants held themselves out to Plaintiff and Class Members as being knowledgeable concerning the labor and employment laws of California.

103.    At all times relevant herein, Defendants intentionally avoided paying Plaintiff and Class Members wages and monies, thereby creating for Defendants an artificially lower cost of doing business in order to undercut their competitors and establish and/or gain a greater foothold in the marketplace.

104.    By violating the foregoing statutes and regulations as herein alleged, Defendants' acts constitute unfair and unlawful business practices under California Business and Professions Code §§ 17200, *et seq.*

105.    As a result of the unfair and unlawful business practices of Defendants as alleged herein, Plaintiff and Class Members are entitled to injunctive relief, disgorgement, and restitution in an amount to be shown according to proof at trial.

106.    Plaintiff seeks to enforce important rights affecting the public interest within the meaning of California Code of Civil Procedure § 1021.5. Defendants' conduct, as alleged herein, has been and continues to be unfair, unlawful, and harmful to Plaintiff, Class Members, and the general public. Based on Defendants' conduct as alleged herein, Plaintiff and Class Members are entitled to an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5.

**PRAYER FOR RELIEF**

On Plaintiff's own behalf and on behalf of all others similarly situated, Plaintiff prays for relief and judgment against Defendants, jointly and severally, as follows:

1. For certification under California Code of Civil Procedure § 382 of the proposed Class and any other appropriate subclass;

2. For appointment of Adriana Magdalena Ramos as class representative;

3. For appointment of Aegis Law Firm, PC, as class counsel for all purposes;

4. For compensatory damages in an amount according to proof at trial;

5. For an award of damages in the amount of unpaid compensation including, but not limited to, unpaid wages, unreimbursed expenses, benefits, and penalties;

6. For economic and/or special damages in an amount according to proof at trial;

7. For liquidated damages pursuant to Labor Code § 1194.2;

8. For statutory penalties to the extent permitted by law, including those pursuant to the Labor Code and IWC Wage Orders;

9. For injunctive relief as provided by the California Labor Code and California Business and Professions Code §§ 17200, *et seq.*;

10. For restitution as provided by Business and Professions Code §§ 17200, *et seq.*;

11. For an order requiring Defendants to restore and disgorge all funds to each employee acquired by means of any act or practice declared by this Court to be unlawful, unfair, or fraudulent and, therefore, constituting unfair competition under Business and Professions Code §§ 17200, *et seq.*;

12. For pre-judgment interest;

13. For reasonable attorneys' fees, costs of suit, and interest to the extent permitted by law, including, but not limited to, Code of Civil Procedure § 1021.5 and Labor Code §§ 226(e) and 1194; and

14. For such other relief as the Court deems just and proper.

///

///

-20-

Dated: February 8, 2023                                    **AEGIS LAW FIRM, PC**

                                                By: _____
                                                    Jessica L. Campbell
                                                    Attorneys for Plaintiff

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial with respect to all issues triable of right by jury.


Dated: February 8, 2023                                    **AEGIS LAW FIRM, PC**

                                                By: _____
                                                    Jessica L. Campbell
                                                    Attorneys for Plaintiff

-21-

AEGIS LAW FIRM, PC
9811 IRVINE CENTER DR STE 100
IRVINE CA 92618-4375

CERTIFIED MAIL

7022 1670 0002 1915 9217



$9.48⁰
US POSTAGE
FIRST-CLASS
FROM 92618
FEB 08 2023
stamps
endicia

AGENT FOR SERVICE OF PROCESS FOR ROADSAFE TRAFFIC S
CSC – Lawyers Incorporating Service
2710 GATEWAY OAKS DR STE 150N
SACRAMENTO CA 95833-3502



**Superior Court of California, County of Sacramento**
720 Ninth Street Sacramento, CA  95814-1380 (916)
874-5522—Website www.saccourt.ca.gov

## NOTICE AND ORDER OF COMPLEX CASE DETERMINATION

**Case Title:**  _ADRIANA M. RAMOS v. ROADSAFE TRAFFIC SYSTEMS_      **Case Number:** _34-2023-00334458_

Having reviewed and considered the pleadings on file, the court orders:

☑ **THE CASE IS DEEMED COMPLEX**  and is assigned to:

_____  Hon. Jill Talley presiding in Dept. 27      ☑  Hon. Lauri Damrell presiding in Dept. 28

This assignment is for all purposes pursuant to California Rules of Court 3.734, et seq. for complex case management, law and motion, and pre-assigned to this department for trial. Other motions reference in Local Rule 1.05 shall also be heard in this department.

| This action involves one or more of the following: | The action is likely to involve: |
|---|---|
| ☐  Antitrust or trade regulations claims | ☑  Numerous pretrial motions raising difficult or novel legal issues that will be time-consuming to resolve |
| ☐  Construction defect claims involving many parties | ☑  Management of large number of witnesses or a substantial amount of documentary evidence |
| ☐  Securities claims or investment losses involving many parties | ☐  Management of a large number of separately represented parties |
| ☐  Environmental or toxic tort claims involving many parties | ☐  Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court |
| ☐  Claims involving mass torts | |
| ☑  Claims involving class actions | ☐  Substantial post judgment judicial supervision |
| ☐  Insurance coverage claims arising out of any of the claims lited above | ☐  Other: |

Government Code section 70616 establishes the fees for complex cases. Pursuant to Government Code section 70616, any non-exempt party who has appeared in this action, but who has not paid the required complex case fee, is ordered to pay the fee to the clerk within ten calendar days of the filing of this order. Failure to pay the required fees shall have the same effect as the failure to pay a filing fee, and shall be subject to the same enforcement and penalties (Cal. Gov. Code § 70616(g)).

☐ **THE CASE IS DECLARED NOT COMPLEX:** Any complex case fees that the parties have previously paid pursuant to 70616(a) or (b) shall be reimbursed upon submission of a refund request together with a copy of this minute order by the paying party to the Court's Civil General Civil Processing Unit. It may be submitted by mail or placed in one of the Civil Drop Boxes located in Room 102 and the lobby of the Gordon D. Schaber Courthouse at 720 9th Street, Sacramento CA 95814.

**The plaintiff is directed to serve all other parties with a copy of this order.**

DATED: _____ 9/15/2023 _____          _____
STEVEN GEVERCER
Supervising Judge Civil Division
Superior Court of California, County of Sacramento

**CERTIFICATE OF SERVICE BY MAILING**
**(C.C.P. Sec. 1013a(4))**

ADRIANA M. RAMOS v. ROADSAFE TRAFFIC SYSTEMS
Case No.: 34-2023-00334458

I, the Clerk of the Superior Court of California, County of Sacramento, certify that I am not a party to this cause, and on the date shown below I served the foregoing **NOTICE and ORDER OF COMPLEX CASE DETERMINATION,** by depositing true copies thereof, enclosed in separate, sealed envelopes with the postage fully prepaid, in the United States Mail at Sacramento, California, each of which envelopes was addressed respectively to the persons and addresses shown below:

**SAMUEL A. WONG**
AEGIS LAW FIRM PC
9811 IRVINE CENTER DRIVE STE 100
IRVINE, CA 92618

I, the undersigned deputy clerk, declare under penalty of perjury that the foregoing is true and correct.

Dated: 2/14/23

Superior Court of California,
County of Sacramento

A. O'Donnell

NEOPOST
02/16/2023
US POSTAGE $000.60⁰

FIRST-CLASS MAIL

ZIP 95814
041L11258068





SUPERIOR COURT OF CALIFORNIA
COUNTY OF SACRAMENTO
720 9th Street, Room 101
Sacramento, CA  95814-1302
*www.saccourt.ca.gov*

POS-015

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|

ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):
AEGIS LAW FIRM, PC
Samuel Wong (SBN: 217104); Jessica L. Campbell (SBN: 280626)
9811 Irvine Center Dr., Suite 100
Irvine, CA 92618
TELEPHONE NO.: (949) 379-6250          FAX NO. (Optional): (949) 379-6251
E-MAIL ADDRESS (Optional): jcampbell@aegislawfirm.com
ATTORNEY FOR (Name): Plaintiff Adriana Magdalena Ramos

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Sacramento
STREET ADDRESS: 720 9th Street
MAILING ADDRESS:
CITY AND ZIP CODE: Sacramento, CA 95814
BRANCH NAME: Gordon D. Shaber Courthouse

PLAINTIFF/PETITIONER: Adriana Magdalena Ramos

DEFENDANT/RESPONDENT: Roadsafe Traffic Systems, Inc.

| NOTICE AND ACKNOWLEDGMENT OF RECEIPT—CIVIL | CASE NUMBER: 34-2023-00334458 |
|---|---|

TO (insert name of party being served): Roadsafe Traffic Systems, Inc.

## NOTICE

The summons and other documents identified below are being served pursuant to section 415.30 of the California Code of Civil Procedure. Your failure to complete this form and return it within 20 days from the date of mailing shown below may subject you (or the party on whose behalf you are being served) to liability for the payment of any expenses incurred in serving a summons on you in any other manner permitted by law.

If you are being served on behalf of a corporation, an unincorporated association (including a partnership), or other entity, this form must be signed by you in the name of such entity or by a person authorized to receive service of process on behalf of such entity. In all other cases, this form must be signed by you personally or by a person authorized by you to acknowledge receipt of summons. If you return this form to the sender, service of a summons is deemed complete on the day you sign the acknowledgment of receipt below.

Date of mailing: March 3, 2023

Jessica L. Campbell
_____                    ►    _____
(TYPE OR PRINT NAME)                                          (SIGNATURE OF SENDER—MUST NOT BE A PARTY IN THIS CASE)

## ACKNOWLEDGMENT OF RECEIPT

This acknowledges receipt of (to be completed by sender before mailing):
1. ☑ A copy of the summons and of the complaint.
2. ☑ Other (specify):
   Notice and Order of Complex Case Determination, Civil Case Cover Sheet

(To be completed by recipient):

Date this form is signed: March 23, 2023

Alexandra M. Asterlin
_____                    ►    _____
(TYPE OR PRINT YOUR NAME AND NAME OF ENTITY, IF ANY,              (SIGNATURE OF PERSON ACKNOWLEDGING RECEIPT, WITH TITLE IF
ON WHOSE BEHALF THIS FORM IS SIGNED)                          ACKNOWLEDGMENT IS MADE ON BEHALF OF ANOTHER PERSON OR ENTITY)

Page 1 of 1

| Form Adopted for Mandatory Use Judicial Council of California POS-015 [Rev. January 1, 2005] | NOTICE AND ACKNOWLEDGMENT OF RECEIPT — CIVIL | Code of Civil Procedure, §§ 415.30, 417.10 www.courtinfo.ca.gov |
|---|---|---|

**PROOF OF SERVICE**

        I am and was at all times herein mentioned over the age of 18 years and not a party to the action in which this service is made.  At all times herein mentioned I have been employed in the County of Sacramento in the office of a member of the bar of this court at whose direction the service was made.  My business address is 500 Capitol Mall, Suite 2500, Sacramento, CA 95814. My email address is: noreen.witt@ogletree.com.

        On March 23, 2023, I served the following document(s):

**NOTICE AND ACKNOWLEDGMENT OF RECEIPT - CIVIL**

by placing ☐ (the original) ☒ (a true copy thereof) in a sealed envelope addressed to:

Samuel A. Wong                                    Attorneys for Plaintiff
Kashif Haque
Jessica L. Campbell
AEGIS LAW FIRM, PC
9811 Irvine Center Drive, Suite 100
Irvine, CA  92618
Telephone:     (949) 379-6250
Facsimile:      (949) 379-6251
Email:     swong@aegislawfirm.com
           khaque@aegislawfirm.com
           jcampbell@aegislawfirm.com

☒     **BY MAIL:**  I placed the envelope for collection and mailing, following our ordinary business practices.  I am readily familiar with the practice of Ogletree, Deakins, Nash, Smoak & Stewart, P.C.'s practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service, in a sealed envelope with postage fully prepaid.

☐     **BY MAIL:**  I deposited the sealed envelope with the United States Postal Service, with the postage fully prepaid at 500 Capitol Mall, Suite 2500, Sacramento, CA 95814.

☐     **BY OVERNIGHT DELIVERY:**  I placed the sealed envelope(s) or package(s) designated by the express service carrier for collection and overnight delivery by following the ordinary business practices of Ogletree, Deakins, Nash, Smoak & Stewart P.C., San Francisco, California.  I am readily familiar with Ogletree, Deakins, Nash, Smoak & Stewart P.C.'s practice for collecting and processing of correspondence for overnight delivery, said practice being that, in the ordinary course of business, correspondence for overnight delivery is deposited with delivery fees paid or provided for at the carrier's express service offices for next-day delivery.

☐     **BY FACSIMILE** by transmitting a facsimile transmission a copy of said document(s) to the following addressee(s) at the following number(s), in accordance with:

              ☐      the written confirmation of counsel in this action:

PROOF OF SERVICE

☐      [State Court motion, opposition or reply only] in accordance with Code of Civil Procedure section 1005(b):

☐      [Federal Court] in accordance with the written confirmation of counsel in this action and order of the court:

☐ **BY E-MAIL OR ELECTRONIC TRANSMISSION:** Based on a court order or an agreement of the parties to accept service by e-mail or electronic transmission, I caused the documents to be sent to the person[s] at the e-mail addresses listed on the attached service list. I did not receive, within a reasonable time after the transmission, any electronic message or other indication that the transmission was unsuccessful.

☒ **(State)**    I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

☐ **(Federal)** I declare that I am employed in the office of a member of the State Bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the above is true and correct.

Executed on March 23, 2023 at Sacramento, California.

*Noreen F. Witt*
_____
Noreen F. Witt

---

3

PROOF OF SERVICE